# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
----------------- * ----------------

UNITED STATES OF AMERICA,

*- against -*

RAFIG SABIR,

*Defendant,*

**Docket No: 1:05-cr-00673**

## MEMORANDUM OF LAW

Kathy Manley
*Attorney for Rafiq Sabir*
26 Dinmore Road
Selkirk, New York 12158
518-635-4005
Mkathy1296@gmail.com

## *TABLE OF CONTENTS*

**Page**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION.................................................................................................................. 2

JURISDICTION AND AUTHORITY TO ACT....................................................................... 3

ELIGIBILITY FOR RELEASE............................................................................................... 3

THE UNDERLYING CASE .................................................................................................. 4

      POINT I       MR. SABIR IS ELIGIBLE FOR RELEASE BASED ON THE
                         'AGE OF THE DEFENDANT' CRITERIA IN USSG 1B1.13
                         APPLICATION NOTE 1(B)…………………………………………… 5

      POINT II      THE RISK POSED BY COVID-19 IS AN EXTRAORDINARY
                         AND COMPELLING REASON TO REDUCE RAFIQ SABIR'S
                         SENTENCE TO TIME SERVED…………………………………….. 9

      POINT III     MR. SABIR POSES NO RISK TO ANYONE'S SAFETY………...... 17

      POINT III     THE 18 USC 3553(a) FACTORS SUPPORT RELEASE……………. 18

CONCLUSION....................................................................................................................... 19

TABLE OF AUTHORITIES

**Page**

**Cases:**

*United States v Acevedo*, 2020 WL 3182770 (SDNY June 15, 2020)…………….   13

*U.S. v. Agomuoh*, 2020 WL 2526113 (EDMI. May, 2020)………………………..   16

*United States v Amarrah*, 2020 U.S. Dist. LEXIS 80396 (EDMI May 7, 2020)…..   14, 16

*United States v. Anderson*, 2020 WL 2849483 (SDNY June 2, 2020)………………   13

*United States v. Asaro*, 2020 US Dist. LEXIS 68044 (April 17, 2020)………………..   15, 16

*United States v. Bellamy*, 2019 US Dist. LEXIS 124219 (DMN 2019)……………….   19

*United States v. Bess*, 2020 U.S. Dist. LEXIS 70125 (WDNY April 22, 2020)……….   15

*United States v. Brooks*, 2020 US Dist. LEXIS 85671 (CDIL May 15, 2020)…………   14, 15

*United States v. Bryant,* 2020 US Dist. LEXIS 75681 (D MD 2020)…………………..   10

*United States v. Cantu-Rivera*, 2019 US Dist. LEXIS 105271 (SDTX 2019)…………..   8

*United States v. Campagna*, 2020 US Dist. LEXIS 54401 (SDNY March 27, 2020)……   13

*United States v. Chapman* 2020 US Dist LEXIS 96356 (NDIL June 2, 2020)…………...   8

*United States v. Coles*, 2020 U.S. Dist. LEXIS 72327 (CDIL Apr. 24, 2020)……………   15

*United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020)………..…….   1, 7

*United States v. Cotinola*, 2020 US Dist. LEXIS 86801 (DNM May 18, 2020)…………   17

*United States v Curtis,* 2020 U.S. Dist. LEXIS 70804 (DDC April 22, 2020)……………   15

*United States v. Daugerdas*, 2020 US Dist. LEXIS 77658 (SDNY May 1, 2020)……….   9

*United States v. Davis*, 2020 US Dist. LEXIS 40652 (DMD 2020)……………………   8

*United States v. Deleon*, 2020 US Dist. LEXIS 86975………………………………..   16

*United States v. DeWilliams*, 1:99-cr-20 (DCO June 15, 2020)…………………………   14

*United States v. Dickerson*, 2020 WL 2841523 (ED Mo. June 1, 2020)…………………   14

*United States v. Ebbers*, 2020 US Dist. LEXIS 3746 (SDNY 2020)……………………   3

*United States v. El-Hanifi*, 1:10-cr-00162-KMW (SDNY May 19, 2020)………………   1, 13

*United States v. Etzel*, 2020 US Dist. LEXIS 77198 (DOR May 1, 2020)………………   14, 17

*United States v. Farhane*, 634 F.3d 127, 175 (2nd Cir. 2011)……………………………   5

*United States v. Feucht*, 2020 WL 2781600 (SD FL May 28, 2020)……………………   16

*United States v. Gentille*, 2020 WL 1814158 (SDNY April 9, 2020)……………………   14

*United States v. Ginsberg*, 2020 US Dist. LEXIS 84907 (NDIL May 14, 2020)…………   17

*United States v. Gileno*, 2020 US Dist. LEXIS 67729 (DCT April 17, 2020)……………   15

*United States v. Gonzalez*, 2020 WL 2766048 (SDNY May 28, 2020)…………………..   14

*United States v. Gorai*, 2020 US Dist. LEXIS 72893 (DNV April 24, 2020)……………   12, 15

*United States v. Gray*, 2020 US Dist LEXIS 97513 (DMD June 3, 2020)……………….   8

*United States v. Hammond*, 2020 US Dist. LEXIS 67331 (DDC April 16, 2020)……   13

*United States v. Hammoud*, 483 Fed Appx 865 (4th Cir. 2012)…………………………..   8

*United States v. Hansen*, 2020 U.S. Dist. LEXIS 80494 (ND Ill. May 7, 2020)…………   14

*United States v. Hansen*, 2020 US Dist. LEXIS 61946 (EDNY April 8, 2020)…………   15

*United States v. Haynes*, 2020 US Dist. LEXIS 71021 (EDNY 2020)……………………   2, 10

*United States v. Hossain*, 1:04-cr-402 (NDNY June 2020)………………………………   2, 13

*United States v. Kataev*, 2020 US Dist. LEXIS 65756 (SDNY April 14, 2020)…………   13

*United States v. Kubinski*, 2020 US Dist LEXIS 84092 (EDNC May 13, 2020)…………   8

*Loyd v. U.S.*, 2020 WL 2572275 (E.D. Mich. May 21, 2020)……………………………   16

*United States v. Lucas*, 2020 WL 2059735 (WDNY 2020)………………………………   15

*United States v. Marks*, 2020 US Dist. LEXIS 68828 (WDNY 2020) ……………………   10

*United States v. Maumau*, 2020 US Dist. LEXIS 28392 (D UT February 18, 2020)………   10, 11

*United States v. McCarthy*, 2020 US Dist. LEXIS 61759 (SDNY April 8, 2020)………...   13

*U.S. v. McIndoo*, 2020 WL 2201970 (W.D.N.Y May 6, 2020)……………………………   16

*United States v. McGraw*, 2019 US Dist. LEXIS 78370 (SDIN 2019)……………………   19

*United States v. McKinney*, 2020 WL 2958228 (WDNY June 4, 2020)……………………   14

*United States v. Modica*, 2020 US Dist. LEXIS 37483 (SDCA 2020)………………………   7, 8

*United States v. Moore*, 2020 U.S. Dist. LEXIS 89222 (D Ore. May 21, 2020)……………   16

*United States v. O'Bryan*, 2020 US Dist. LEXIS 29747 (DKS February 21, 2020)………..   10

*United States v. Ozols*, 2020 WL 2849893 (SDNY June 2, 2020)…………………………   13

*U.S. v. Pabon*, 2020 WL 2112265 (E.D. Pa. May 4, 2020)…………………………………   16

*United States v. Park*, 2020 U.S. Dist. LEXIS 73048 (SDNY Apr. 24, 2020)……………..   13

*United States v. Pena*, 2020 US Dist. LEXIS 85431 (SDNY May 11, 2020)……………..   13

*United States v. Peters*, 2020 WL 2092617 (D CT 2020)…………………………………...   14

*United States v. Pomante*, 2020 U.S. Dist. LEXIS 85626 (EDMI May 15, 2020)………..   14, 16

*United States v. Rahim*, 2020 U.S. Dist. LEXIS 89355 (EDMI May 21, 2020)…………..   16

*United States v. Readus*, 2020 US Dist. LEXIS 89351 (EDMI May 21, 2020)…………..   16, 17

*United States v. Redd*, 2020 US Dist. LEXIS 45971 (EDVA 2020)……………………..   17

*U.S. v. Regas*, 2020 WL 2926457 (D. Nev. June 3, 2020)………………………………..   16

*United States v. Resnick*, 2020 US Dist. LEXIS 59091 (SDNY April 2, 2020)…………..   14

*United States v. Rivera*, 2020 U.S. Dist. LEXIS 77662 (SDNY 2020)……………………   13

*United States v. Rodriguez*, 2020 WL 3051443 (SDNY June 8, 2020)…………………..   13

*United States v. Russo*, 2020 US Dist. LEXIS 65390 (SDNY April 14, 2020)…………..   14

*United States v. Sanchez*, 020 U.S. Dist. LEXIS 70802 (DCT April 22, 2020)…………..   15

*United States v Sawicz*, 2020 US Dist LEXIS 64418 (EDNY April 10, 2020)……………   15

*United States v. Scparta*, 18-cr-578 (SDNY April 19, 2020)……………………………...   13

*United States v. Simpson*, 2020 US Dist LEXIS 84490 (NDCA May 11, 2020)………….   15, 17

*United States v. Smith*, 2020 US Dist. LEXIS 64371 (SDNY April 13, 2020)…………..   14

*United States v. Smith*, 2020 WL 2844222 (SDIA June 1, 2020)…………………………   14

*United States v. Tajideen*, 1:17-cr-046 (DDC May, 2020)……………………………...   2, 13

*United States v. Thorson*, 2020 U.S. Dist. LEXIS 72595 (WDKY Apr. 24, 2020)……….   15

*United States v. Torres*, 2020 WL 2815003 (SDNY June 2, 2020)………………………   13

*United States v. Urkevich*, 2019 US Dist. LEXIS 197408 (D NE 2019)…………………..   10

*United States v. Valencia*, 2020 US Dist. LEXIS 82436 (SDNY May 11, 2020)…………   14

*United States v. Whyte*, 2020 US Dist. LEXIS 92318 (WDV May, 2020)………………...   14

*United States v. Williams*, 2020 US Dist. LEXIS 63824 (NDFL April 1, 2020)………….   15, 16

*United States v. Williams-Bethea*, 2020 WL 2848098 (SDNY June 2, 2020)……………..   13

*United States v. Young*, 2020 US Dist. LEXIS 37395 (MDTN 2020) ……………………..   10

*United States v. Zukerman*, 2020 US Dist. LEXIS 59588 (SDNY April 3, 2020)………….   13

**Statues and Regulations:**

18 USC 3142(g) …………………………………………………………………………….   18

18 USC 3553(a)……………………………………………………………………………..   4, 18

18 U.S.C. 3582(c)(1)(A)(i) …………………………………………………………………... 1, 3, 18

18 USSG Appx 1B1.13………………………………………………………………………… *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————————

**UNITED STATES OF AMERICA**

> **v.**

                                            **No. 1:05-cr-00673**

**RAFIQ SABIR,**

                                           **MEMORANDUM OF LAW**

                   Defendant.

———————————————————————————————

## DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE BASED ON EXTRAORDINARY AND COMPELLING REASONS

       Rafiq Sabir, by undersigned counsel, moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, for a modification of his sentence based on extraordinary and compelling reasons, that is, advanced age and debilitating illness, including prostate cancer, which puts him at very high risk from COVID-19.

       The current COVID-19 epidemic poses an extraordinary and compelling reason to release Mr. Sabir, in addition to the already-existing reasons under USSG 1B1.13. As noted below, as stated in *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020), on March 19, 2020, the House Judiciary Committee urged that all existing authority be utilized to reduce the number of people in federal prisons, especially those over 65, or who have certain health conditions.

       A judge in this district recently granted this motion in a terrorism case – where the defendant was convicted of conspiring and attempting to provide material support to Al Qaeda. *United States v. El-Hanifi*, 1:10-cr-00162-KMW (SDNY May 19, 2020.) Compassionate release motions have also been recently granted in at least two other terrorism case: *United States v.*

1

*Hossain*, 1:04-cr-402 (NDNY June 2020) and *United States v. Tajideen*, 1:17-cr-046 (DDC May, 2020.)

 The virus is already spreading in many federal prisons - soon it may be too late for Mr. Sabir. See https://www.bop.gov/coronavirus/. There were 57 cases on April 1, and as of **June 24** there are **6340** cases where inmates have tested positive for the virus in federal prisons (including 5080 inmates said to be recovered[1].) The number is probably much higher, as testing is not always available.  **88** BOP inmates have died from COVID-19 thus far.

Mr. Sabir will turn 66 on July 4, 2020, and has several serious, chronic health conditions, including belatedly diagnosed prostate cancer; hypertension; asthma/chronic lung disease; and high cholesterol, which put him at particular risk from the virus. He has already served nearly three quarters of his 30 year sentence, and has a good institutional record.

**Introduction**

Mr. Sabir has been incarcerated in connection with this case for 15 years, since May 28, 2005, and is due to be released in January, 2027, meaning that he has served more than two thirds, and nearly three quarters, of his sentence (16 years would be three quarters).  Mr. Sabir is over 65 years old and suffers from several serious and chronic medical conditions, as described below. Mr. Sabir meets the United States Sentencing Commission criteria for "extraordinary and compelling circumstances" set for in USSG 1B1.13 comment n 1 (B) based on "Age of the Defendant." In addition, his age and medical conditions, especially the cancer, the hypertension and the asthma, put him at a very high risk for dying of COVID-19. See Affidavit of Dr. Brie

---

[1] There are some oddities with BOP's published statistics on "recovered" inmates. These numbers are published every day on bop.gov, yet there have been several days when the number of "recovered" inmates *decreased*. Since that is a cumulative figure, *the only explanation is that the numbers were wrong, or some inmates had become re-infected or were never really "recovered" to begin with*. There are also anecdotal reports of inmates being classified as recovered when they still had symptoms and were not re-tested – Assistant Public Defender Andrew Grindod from the Eastern District of Virginia is investigating this. The number of "recovered" inmates decreased from 3689 on June 3 to 3681 on June 4; then they decreased from 3675 to 3672 from June 9-10. *They decreased four days in a row from June 17- June 10 (4970, 4960, 4955 and 4953 respectively*.)

Williams, attached as Exhibit "A," at 4. This is a separate extraordinary and compelling reason warranting release.

**Jurisdiction and Authority to Act**

Mr. Sabir is presently incarcerated, under BOP Register Number 55312-066, at FCI Loretto. On April 3, 2020 (and previously, on March 7, 2020), he requested of the Warden that the Bureau seek his release under § 3582(c)(1)(A)(i). Mr. Sabir's Applications are attached at Exhibit "B." As is has been more than 30 days since the Warden received Mr. Sabir's requests, he has exhausted his administrative remedies under 18 USC 3582(c)(1)(a), which provides that the court may act 30 days after the warden receives the application. *United States v. Hammond*, 2020 US Dist. LEXIS 67331 (DDC April 16, 2020.)

**Mr. Sabir is Eligible for Release Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, and the Criteria Set Forth in USSG 1B1.13**

The governing statute directs the Court to first determine if there are "extraordinary and compelling reasons" consistent with policy Statements by the Sentencing Commission; to determine whether the defendant poses a "danger to the safety of any other person or the community" as set forth in 18 USC 3142(g); and finally to grant the motion if the factors set forth in section 3553(a) do not require its denial. 18 USC 3582(c); 18 USCS Appx 1B1.13; *United States v. Ebbers*, 2020 US Dist. LEXIS 3746 (SDNY 2020.)

The Commission's policy statement, USSG § 1B1.13, contains two different provisions under which Mr. Sabir is eligible for sentence modification: Age of the Defendant (1B1.13, Application Note 1[B]; and Other Extraordinary and Compelling Reasons [here, COVID-19]).

Application Note 1(B) – Age of the Defendant – provides:

(B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging

process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

As already noted, Mr. Sabir is presently 65 years of age and has served more than 10 years (and nearly 75%) of his 30 year term, and thus certainly meets two of the three criteria set forth in the Age of the Defendant section. As discussed below, he meets the medical criteria as well.

Because of the high risk COVID-19 poses to him, it is submitted that Mr. Sabir is also eligible for sentence modification based on Other Extraordinary and Compelling Reasons [here, COVID-19]). USSG 1B1.13 Application Note 1(D.) Relevant caselaw granting relief under Application Note 1(D) is discussed below.

As also discussed below, Mr. Sabir poses no safety risk to anyone. Moreover, the 3553(a) factors support release, as set forth in more detail below.

**The Underlying Case and Sentence**

Rafiq Sabir was convicted after trial in 2007 of conspiring and attempting to provide material support to a designated terrorist organization, and was sentenced to 360 months in November, 2007. The sentence was comprised of two consecutive fifteen year terms, one for the conspiracy, and one for the attempt. He has been incarcerated since June 27, 2005. Mr. Sabir has absolutely no criminal history.

Rafiq Sabir was a medical doctor whose offense derived from a sting operation targeting his friend, Tarik Shah. Mr. Sabir's offense was to agree (as part of the sting) to be on call to provide medical treatment to wounded Al Qaeda fighters while he was working at a hospital in Saudi Arabia. He also, at the behest of the informant, swore an oath to support Al Qaeda. The oath was in Arabic, in which he is not fluent. (Sentencing Memo, at 8; Exhibit "E" at 1, showing

4

he took an Arabic class in prison) Mr. Shah, who was more involved in the offense, pled guilty and was sentenced to fifteen years – he was released in 2018, and is doing well.

The decision on the direct appeal contained a dissent by Judge Dearie arguing that the evidence was insufficient to sustain the attempted material support – if another judge had agreed, the sentence could not have been more than fifteen years, the statutory maximum for material support at that time. *United States v. Farhane*, 634 F.3d 127, 175 (2nd Cir. 2011)

Mr. Sabir filed a *pro se* 2255 petition in 2012 – he was subsequently represented by attorney Charles Swift, who filed a supplemental memorandum, arguing that 1) trial counsel was ineffective for failing to obtain a linguistics expert to show Mr. Sabir's lack of understanding of Arabic (which was material with regard to his understanding of the Al Qaeda oath, which was in Arabic); 2) new evidence – a declaration of Tarik Shah[2] - showed that, contrary to the government's claims, Mr. Shah had never discussed the purported conspiracy with Mr. Sabir; and 3) a *Brady* violation in that the prosecution never provided certain of Shah's statements which were favorable to Sabir. The 2255 Petition has not yet been decided.

## POINT I

### MR. SABIR IS ELIGIBLE FOR RELEASE BASED ON THE 'AGE OF THE DEFENDANT' CRITERIA IN USSG 1B1.13 APPLICATION NOTE 1(B)

Application Note 1(B) – Age of the Defendant – provides:

> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

---

[2] The petition argued that, as Mr. Shah's attorney had indicated that he would invoke the Fifth Amendment if called at trial, he was an unavailable witness at the time, whose statement now constitutes new evidence. In the alternative, the motion argued that if this Court held that Mr. Shah was not unavailable at the time, then his attorney was ineffective for not calling him to the stand and seeing if he invoked the Fifth Amendment.

As noted above, Mr. Sabir is 65 (nearly 66) and has served well more than 10 years in prison – he has served more than 15 years. In addition, Rafiq Sabir has been experiencing a serious deterioration of his physical health as a result of aging in several different ways. He suffers from prostate cancer, hypertension, asthma, high cholesterol, elevated hemoglobin, and orthopedic issues (he had a hip replacement.) (Exhibit "B"; Declaration from Rafiq Sabir[3] attached as Exhibit "C;" recently received medical records, attached as Exhibit "D;" Exhibit "E at 3, showing he requires a lower bunk due to his orthopedic issues.)

**Prostate Cancer**

Mr. Sabir notes in his Declaration that he is very likely to have prostate cancer, as his PSA is quite elevated, and his father died of prostate cancer. (Exhibit "C" at 2) He recently underwent an MRI for this, and was still awaiting those results, and still awaiting a biopsy, when he wrote the instant Declaration. (Exhibit "C" at 2)

The records counsel just obtained on June 23, 2020 include the MRI results. Very significantly, those records state that, while a biopsy has not yet been done (this is very problematic) the MRI shows a "*Very high likelihood of clinically significant cancer.*" (Exhibit "D" at 3, emphasis supplied) This document shows that the likelihood of cancer is given a score of 1-5, and Mr. Sabir's is a 5, the highest possible likelihood.

Moreover, the MRI results show that Rafiq Sabir has a lesion (tumor) on his prostate, and it very likely extends outside of the prostate – the document states, "Extraprostatic extension: Highly likely due to bulging of the posterior lateral peripheral zone and indistinctness of the margins of the prostate gland at the level of the lesion in the prostate apex." (Exhibit "D" at 3)

---

[3] As of June 14, Mr. Sabir had not been able obtain any of his medical records, so he (who was a medical doctor prior to his incarceration) submitted a Declaration describing his medical conditions. On June 23, counsel received a few medical records from Mr. Sabir, including those documenting the cancer. It is expected that the United States Attorney will be able to obtain the rest of the medical records from BOP very quickly, and can provide them to the defense.

The documents also show that Mr. Sabir's PSA level has been quite high since at least January, 2019. (Exhibit "D" at 4-8) However, he *still* has not had a biopsy, and it is possible that this delay has allowed the cancer to grow from non-lethal to lethal. While the prosecution may argue that, because the prison has *still* not gotten a biopsy for Rafiq Sabir, the cancer diagnosis is not 100 % certain, it would be wrong to discount a "very high likelihood of clinically significant cancer" and a tumor because of BOP delay.

**Other Medical Conditions**

Rafiq Sabir points out that he often needs an inhaler to deal with his chronic lung disease, which flares up often, and is exacerbated whenever the environment is dusty or there is poor ventilation. (Exhibit "C" at 1-2) He is prescribed an albuterol inhaler. (Exhibit "C" at 2)

Mr. Sabir also notes that he was diagnosed with hypertension while in FCI Danbury, and was prescribed Lisinapril (an ACE inhibitor.) (Exhibit "C" at 2) However, his tongue swelled up in a very distressing manner in 2018, and he suspected it was due to the Lisinapril, so he stopped taking it, and has not been taking medication for the high blood pressure since that time. (Exhibit "C" at 2) Upon information and belief BOP medical records will document the diagnosis of hypertension.

Rafiq Sabir also described how his Hemoglobin A1C levels showed him to be prediabetic. (Exhibit "C" at 2; Exhibit "D" at 10) His glucose levels have also been quite high at times. (Exhibit "D" at 11) Mr. Sabir also has high cholesterol, and he had a total left hip replacement. (Exhibit "B" at 4)

There are several recent cases where courts have granted compassionate release under Application Note 1(B) "Age of Defendant." *United States v. Copeland,* 2020 US Dist. LEXIS 87983 (EDNY May 19, 2020); *United States v. Modica*, 2020 US Dist. LEXIS 37483 (SDCA

2020); *United States v. Cantu-Rivera*, 2019 US Dist. LEXIS 105271 (SDTX 2019); *United States v. Kubinski*, 2020 US Dist LEXIS 84092 (EDNC May 13, 2020); *United States v. Davis*, 2020 US Dist. LEXIS 40652 (DMD 2020); *United States v. Gray*, 2020 US Dist LEXIS 97513 (DMD June 3, 2020); *United States v. Chapman* 2020 US Dist LEXIS 96356 (NDIL June 2, 2020.)

In *Modica,* the court recently granted released to a 77 year-old man serving a life sentence whose medical condition was less serious than Mr. Sabir's. The *Modica* court stated:

> "Before passage of the FSA, the Sentencing Commission limited 'extraordinary and compelling reasons' to four scenarios…One of those scenarios applies here. Specifically, 1B1.13 cmt n. 1(B) provides that 'extraordinary and compelling reasons' exist where a defendant '(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less….
>
> ***
>
> Defendant meets these criteria. He is 77 years old and he has served at least 10 years of his term of imprisonment. He also has a well-documented history of serious deterioration in physical and mental health which is age-related. He is enrolled in a general chronic care clinic, and presents several age-related conditions, including 'benign prostatic hypertrophy,' 'mild-to-moderate degenerative disc disease,' and 'some decrease in memory.' He was placed on suicide watch in December, 2018, after being assaulted. … These facts are not disputed, and are sufficient to show Defendant is experiencing serious deterioration in physical and mental health because f the aging process. Defendant has therefore presented extraordinary and compelling reasons in support of his motion." *Modica*, supra, at 6-9.

In *United States v. Kubinski*, supra, the court granted release to a man who had served 20 years of a *life sentence* for serious drug convictions based on his age and medical conditions.

In *United States v. Davis*, supra, the court likewise granted the application, stating:

> "The Court finds that Davis meets the definition of 'extraordinary and compelling reasons' as defined by USSG 1B1.13 Application Note 1. …[H]e is 79 years old and reports serious deterioration of his physical health. He has undergone three prostrate surgeries and has been diagnosed with benign localized hyperplasia of the prostate, among numerous other ailments.… Davis has served more than 10 years of his sentence…" *Davis*, supra, at 5-6

Like the *Modica, Kubinski* and *Davis* defendants, as well as the other cases cited above, based on his age, time served and his several chronic health conditions, Mr. Sabir meets the criteria for "extraordinary and compelling reasons" set forth in 1B1.13. In fact, especially given the prostate cancer, it appears that Mr. Sabir's medical conditions are even more severe than in most if not all of those cases.

## POINT II

### THE RISK POSED BY COVID-19 IS AN EXTRAORDINARY AND COMPELLING REASON TO REDUCE RAFIQ SABIR'S SENTENCE TO TIME SERVED

The risk posed to Mr. Sabir by COVID-19 based on his age; his prostate cancer; his high blood pressure, and his lung disease, in addition to his high cholesterol, constitutes a reason to grant compassionate release herein, as has occurred in many recent cases.

According to the Center for Disease Control, hypertension and asthma are among the conditions which pose a heightened risk of complications and fatality from COVID-19. (Exhibit "A" at 4) Cancer (and cancer treatments, which have not yet begun in this case, but should) is also a definite risk factor for COVID-19, as it weakens the immune system. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html It is also very clear that people over 65, such as Mr. Sabir, face a heightened risk from the virus due to their age alone. (Exhibit "A" at 4) High cholesterol is also a risk factor. See *United States v. Daugerdas*, 2020 US Dist. LEXIS 77658 (SDNY May 1, 2020), at 7. Finally, all those in a prison environment face a higher risk of complications and death from the virus due to the limited and problematic medical care available in prison. (Exhibit "A" at 4, 6-7)

**The COVID-19 Measures Taken by the Bureau of Prisons are Severely Inadequate**

Despite the best efforts of the BOP, this virus has been continuing to spread through more and more facilities, with a sharp rate of increase in the number of cases over time. See *New York Times,* "Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide," June 16, 2020, https://www.nytimes.com/2020/06/16/us/coronavirus-inmates-prisons-jails.html. *Since then, cases have been rising nationwide, which will result in even more prison cases.*

The graph below (obtained from the New York Federal Defender Office) shows the number of COVID-19 infections per 1,000 people in various places, including the United States as a whole and within the Bureau of Prisons. The rate is clearly very high within BOP.



It can also be seen from the BOP website that *inmates test positive in new facilities nearly every day*. Many of those are halfway houses, but, according to the data on the BOP website, the facilities where cases have popped up since May 1 include FCI Beaumont Low – 5/1; FCI Beaumont Medium – 5/1; Beaumont USP – 5/23; El Reno FCI – 5/7; Estill FCI – 6/5; Gilmer FCI – 5/2; Hazelton USP – 5/21; Marion USP – 6/1; McDowell FCI – 5/12; Montgomery FPC – 5/7; Petersburgh low FCI – 5/14; Philadelphia FDC – 5/1; Rochester FMC - 5/2; Terre Haute

10

USP 5/19 (*with an inmate death by 5/26*); Bastrop FCI – 6/20; Big Spring FCI – 6/9; Duluth FPC – 6/19; Phoenix FCI – 6/22; Pollock USP – 6/14; Herlong FCI – 6/9; Springfield FMC – 6/12; Terre Haute FCI – 6/23; Victorville USP – 6/24; Tucson FCI – 6/24; and Thomson USP – 6/8.

The graph below, obtained from the Federal Public Defender, shows the number of COVID-19 cases and the number COVID-19 deaths in the BOP system as of June 12, 2020, *according to BOP statistics*.



However, the BOP figures have not always been accurate. In addition to the issue described above in Footnote 1, two *Chicago Sun Times* articles reported that the number of documented cases at Chicago MCC was higher than the numbers reported by BOP, and that after this was publicized the first time, BOP altered their numbers to reflect the reality on the

ground.https://chicago.suntimes.com/coronavirus/2020/4/18/21225747/coronavirus-cases-rising-

chicago-federal-jail See also https://www.chicagotribune.com/coronavirus/ct-coronavirus-mcc-

chicago-response-20200429-e3crup5ifnatznwjm42fn7emre-story.html

In addition to there being more *documented* cases than those reported by BOP, it is also

clear that, as is true also in many other places, the true number of cases is much higher due to a

lack of testing.

In *United States v. Gorai*, 2020 US Dist. LEXIS 72893 (DNV April 24, 2020), the court

stated, at 6:

> "First, testing inside prisons has been scant except for people who self-report
> symptoms-which means that statistics about the number of infections already in BOP
> facilities are largely meaningless. And second, the plan provides no additional protections
> for high-risk individuals." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL
> 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote citation omitted)."

For some time, BOP had restricted transfers of new inmates into BOP facilities, and

restricted transfers between facilities. But on May 22, BOP began moving about 6,800 new

inmates into BOP facilities. See

https://www.bop.gov/resources/news/pdfs/20200525_press_release_update_inmate_movement.p

df

While all new inmates are apparently screened for symptoms, it is very significant that

*they are not tested unless they show symptoms.* It is well-known that many people can spread the

virus while they are non-symptomatic, and that some people who have COVID-19 never have

any symptoms. It is also noteworthy that according to data from the BOP website, the Oklahoma

City Transfer Center had one case on April 12, and 97 (including 60 recovered) by June 24.

Recently, federal courts, including many in this district, have been granting

compassionate release motions based on the risk posed to particular defendants by the COVID-

19 virus. *United States v. El-Hanifi,* supra (terrorism case – 44 year old with deep vein thrombosis); *United States v. Hossain*, supra; *United States v. Tajideen*, supra; *United States v. Rivera*, 2020 U.S. Dist. LEXIS 77662 (SDNY 2020) (54 year old with diabetes and hypertension who was fugitive in drug case from 1987 to 2019 and only served 7 months); *United States v. Park*, 2020 U.S. Dist. LEXIS 73048 (SDNY Apr. 24, 2020) (44 year-old with severe asthma and immune-compromising disease granted compassionate release despite egregious nature of offense); *United States v. Campagna*, 2020 US Dist. LEXIS 54401 (SDNY March 27, 2020) (55 year old man with compromised immune system granted compassionate release); *United States v. Zukerman*, 2020 US Dist. LEXIS 59588 (SDNY April 3, 2020); *United States v. McCarthy*, 2020 US Dist. LEXIS 61759 (SDNY April 8, 2020) (65 year-old man with lengthy criminal history serving recent sentence for violent crime granted compassionate release based on COPD and asthma); *United States v. Hammond*, 2020 WL 1891980 (DDC Apr. 16, 2020) (77 year-old serving 355 month sentence granted compassionate release); *United States v Acevedo*, 2020 WL 3182770 (SDNY June 15, 2020); *United States v. Rodriguez*, 2020 WL 3051443 (SDNY June 8, 2020); *United States v. Williams-Bethea*, 2020 WL 2848098 (SDNY June 2, 2020); *United States v. Anderson*, 2020 WL 2849483 (SDNY June 2, 2020) (obese 47 year-old released after serving 2/3 of his 84 month sentence); *United States v. Ozols*, 2020 WL 2849893 (SDNY June 2, 2020) (42 year-old with anxiety and depression who had served about ¾ of his sentence); *United States v. Torres*, 2020 WL 2815003 (SDNY June 2, 2020)(two brothers who had served 33 years of a **life sentence**); *United States v. Scparta*, 18-cr-578 (SDNY April 19, 2020); *United States v. Kataev*, 2020 US Dist. LEXIS 65756 (SDNY April 14, 2020) (51 year-old with sinusitis granted compassionate release); *United States v. Pena*, 2020 US Dist. LEXIS 85431 (SDNY May 11, 2020) (man with hypertension who served two thirds of 84 month sentence for **armed**

**robbery);** *United States v. Valencia*, 2020 US Dist. LEXIS 82436 (SDNY May 11, 2020);

*United States v. Resnick*, 2020 US Dist. LEXIS 59091 (SDNY April 2, 2020); *United States v.*

*Smith*, 2020 US Dist. LEXIS 64371 (SDNY April 13, 2020) (at risk due to asthma); *United*

*States v. Russo*, 2020 US Dist. LEXIS 65390 (SDNY April 14, 2020); *United States v. Gentille*,

2020 WL 1814158 (SDNY April 9, 2020); *United States v. Whyte*, 2020 US Dist. LEXIS 92318

(WDV May, 2020) (man with **prostate cancer** who had served about half of his sentence and

about whom the court said he "put the lives of soldiers in harm's way for his own financial

gain"); *United States v. DeWilliams*, 1:99-cr-20 (DCO June 15, 2020) (armed career criminal

serving 293 month sentence for weapons possession committed while on parole for an armed

bank robbery); *United States v. Dickerson*, 2020 WL 2841523 (ED Mo. June 1, 2020)(career

criminal with nearly three years remaining of 15 year sentence, and who was in FCI Terre

Haute); *United States v. Smith*, 2020 WL 2844222 (SDIA June 1, 2020) (man who served **12**

**years of a life sentence** for drugs and firearms); *United States v. McKinney*, 2020 WL 2958228

(WDNY June 4, 2020) (career offender with severe medical conditions who had *only served 18*

*months of a 120 month sentence*);  *United States v. Gonzalez*, 2020 WL 2766048 (SDNY May

28, 2020) (45 year-old career criminal); *United States v. Hansen*, 2020 U.S. Dist. LEXIS 80494

(ND Ill. May 7, 2020) (man with underlying medical conditions at facility with no reported

cases); *United States v Amarrah*, 2020 U.S. Dist. LEXIS 80396 (ED Mich. May 7, 2020) (45

year-old with several medical conditions – only served 1/3 of his sentence and at facility with no

reported cases); *United States v. Etzel*, 2020 US Dist. LEXIS 77198 (DOR May 1, 2020); *United*

*States v. Peters*, 2020 WL 2092617 (D CT 2020) (39 year old immune-compromised man in

facility with no COVID cases); *United States v. Pomante*, 2020 U.S. Dist. LEXIS 85626 (EDMI

May 15, 2020) (man with hypertension at facility with no reported cases); *United States v.*

*Brooks*, 2020 US Dist. LEXIS 85671 (CDIL May 15, 2020) (**45 year old with asthma and hypertension serving 284 mo sentence for drugs and weapons**); *United States v. Simpson*, 2020 US Dist LEXIS 84490 (NDCA May 11, 2020) (has lung disease at facility with no COVID cases); *United States v. Lucas*, 2020 WL 2059735 (WDNY 2020) (man with diabetes in facility with no COVID cases); *United States v. Gorai*, 2020 US Dist. LEXIS 72893 (DNV April 24, 2020) (man sentenced to 57 months in 2019 granted compassionate release; was high-risk due to asthma); *United States v. Coles*, 2020 U.S. Dist. LEXIS 72327 (CDIL Apr. 24, 2020) (48 year-old granted due to hypertension); *United States v. Thorson*, 2020 U.S. Dist. LEXIS 72595 (WDKY Apr. 24, 2020); *United States v. Curtis*, 2020 U.S. Dist. LEXIS 70804 (DDC April 22, 2020) (man serving *life sentence* for sex-trafficking minors granted compassionate release based on extremely severe medical conditions); *United States v. Bess*, 2020 U.S. Dist. LEXIS 70125 (WDNY April 22, 2020) (64 year-old man sentenced to 84 months in 2019 granted compassionate release based on his serious medical conditions); *United States* v. *Sanchez*, 2020 U.S. Dist. LEXIS 70802 (DCT April 22, 2020) (high-risk due to lupus); *United States v. Hansen*, 2020 US Dist. LEXIS 61946 (EDNY April 8, 2020); *United States v Sawicz*, 2020 US Dist LEXIS 64418 (EDNY April 10, 2020) (sex offender with hypertension granted compassionate release); *United States v. Asaro*, 2020 US Dist. LEXIS 68044 (April 17, 2020) (organized crime figure who committed violent crime at the age of 77 granted compassionate release); *United States v. Gileno*, 2020 US Dist. LEXIS 67729 (DCT April 17, 2020) (compassionate release based on chronic asthma); *United States v. Williams*, 2020 US Dist. LEXIS 63824 (NDFL April 1, 2020) (career offender serving life imprisonment for bank robbery released based on age and medical conditions.)

Several of the cases, including *DeWilliams, Torres, Pena, Smith, Brooks, Asaro, McCarthy*, *Williams,* and *Hammond*, involve lengthy sentences, not due to end any time soon, and they were all imposed for violent crimes. *Asaro* involved a high-level organized crime figure who had lived a life of violence; *Williams* involved a life sentence for a violent crime and a long history of violence.

In contrast, Mr. Sabir has *no criminal history*, and no history of violence. Like the other defendants, he is at serious risk of dying from COVID-19 should he be exposed to it.

Even though there are no *current, reported* cases of COVID-19 at FCI Loretto, BOP granted home confinement to Paul Manafort after his attorneys wrote a letter pointing out that the dorm-like conditions at FCI Loretto, as well as the lack of ventilation and other factors, make the spread of any COVID-19 infection very likely.

There are many courts who have granted compassionate release despite the lack of cases at the facility in question. *United States v. Deleon*, 2020 US Dist. LEXIS 86975 at *5-6 (SDNY May, 2020); *U.S. v. Amarrah*, 2020 WL 2220008 at *6 (EDMI May, 2020); *U.S. v. Agomuoh*, 2020 WL 2526113 at *9 (EDMI. May, 2020); *U.S. v. McIndoo*, 2020 WL 2201970 at *4 (W.D.N.Y May 6, 2020); *U.S. v. Pomante*, 2020 WL 2513095 at *4 (E.D. Mich. May 15, 2020); *U.S. v. Pabon*, 2020 WL 2112265 at *5 (E.D. Pa. May 4, 2020); *Loyd v. U.S.*, 2020 WL 2572275 at *3 (E.D. Mich. May 21, 2020) "…[Z]ero confirmed cases is *likely more a result of a lack of testing than a lack of the virus' presence in the prison*."; *U.S. v. Regas*, 2020 WL 2926457 at *3 (D. Nev. June 3, 2020); *U.S. Locke*, 2020 WL 3101016 (W.D. Wash. June 11, 2020); *United States v. Feucht*, 2020 WL 2781600 at *8-9 (SD FL May 28, 2020); *United States v. Moore*, 2020 U.S. Dist. LEXIS 89222 at *4 (D Ore. May 21, 2020); *United States v. Rahim*, 2020 U.S. Dist. LEXIS 89355 (EDMI May 21, 2020); *United States v. Readus*, 2020 US Dist. LEXIS

89351 (EDMI May 21, 2020); *United States v. Cotinola*, 2020 US Dist. LEXIS 86801 (DNM May 18, 2020); *United States v. Ginsberg*, 2020 US Dist. LEXIS 84907 (NDIL May 14, 2020); *United States v. Simpson*, 2020 US Dist LEXIS 84490 (NDCA May 11, 2020); *United States v. Etzel*, 2020 US Dist. LEXIS 77198 (DOR May 1, 2020).

Based on the foregoing, this Court should find that the combination of Rafiq Sabir's age and medical conditions put him at risk for COVID-19, and that this constitutes an extraordinary and compelling reason under 18 USC 3582(c)(1)(A.)

## POINT II

### MR. SABIR POSES NO RISK TO ANYONE'S SAFETY

USSG 1B1.13(2) states that the court must find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 USC 3142(g)." 18 USC 3142(g) contains three factors for the court to consider in this regard: "1) the nature and circumstances of the offense charged; 2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history and drug and alcohol abuse; and 3) the nature and seriousness of the danger to any person or to the community that release would impose."

In *United States v. Redd*, 2020 US Dist. LEXIS 45971 (EDVA 2020), at 23, the court stated:

> "…Mr. Redd does not constitute a danger to the safety of others or the community. …At age 64, he is statistically unlikely to recidivate, and while his criminal conduct involved a firearm, his limited prior criminal history did not involved violence, and his conduct during his more than 20 years in prison is overwhelmingly positive…"

Mr. Sabir is even older than Mr. Redd, and his conduct over his 15 years in prison has been mostly positive. He successfully completed at least 42 programs, and has taught some classes himself. He does have some disciplinary violations, but none of them involved any

17

violent conduct or threats of violence[4], and they don't make him a threat to anyone's safety. Rafiq Sabir has absolutely *no criminal history*, and will be on supervised release for two years when he gets out of prison.

Based on the foregoing, this Court should find that Mr. Sabir does not pose a danger to anyone's safety.

**POINT III**

**THE 18 USC 3553(a) FACTORS SUPPORT RELEASE**

Consideration of the applicable factors from 18 U.S.C. § 3553(a), as also required by § 3582(c)(1)(A), leads to the conclusion that reduction at this time of Mr. Sabir's term of imprisonment to the time already served is warranted.

(a) The "characteristics of the defendant," § 3553(a)(1), now include his chronic medical conditions, as well as his *high risk of dying from COVID-19 in prison*, *based on his prostate cancer, lung disease and hypertension as well as the other conditions discussed above.*

(b) Service of 15 years – nearly 3/4 of his sentence - fully reflects the seriousness of the offense, and satisfies the need to provide just punishment and to afford adequate deterrence. It is noted that his co-defendant, Tarik Shah, who was much more involved in the plot, was sentenced to only 15 years and has been released.

(c) Being 65 years old, Mr. Sabir's age places him in the class of prisoners least likely to recidivate. Based on this and the other factors discussed herein, the need to protect the public from further crimes is fully addressed.

---

[4] The most recent, in April, 2020, involved missing the count due to an urgent need to use the bathroom; one in August, 2019 (for possession of a cellphone) was reversed on appeal; there was one in March, 2019, which involved a hunger strike; one in July, 2012 for disobeying a direct order; on in December, 2011 involving money transferred between inmates; and one in August, 2008 for possessing postage stamps improperly.

(d) Consideration of providing needed medical care in the most effective manner suggests release rather than continued incarceration. *This is particularly true at this time when prisoners are at great risk from the coronavirus. For this reason alone, he should be released.*

(e) Given all the facts and circumstances discussed herein, a reduction in sentence is not inconsistent with the need to avoid unwarranted sentencing disparities. As stated in *United States v. Bellamy*, 2019 US Dist. LEXIS 124219 (DMN 2019), at 19, "…any disparity resulting from a reduced sentence is not unwarranted given the special circumstances he faces in prison as a result of his health and age."

(f) Finally, upon consideration of the overall statutory command that all sentences, while sufficient to achieve the objectives identified in subsection (a)(2), are not "greater than necessary," 18 U.S.C. § 3553(a), the sentence of imprisonment in this case should be reduced to time served for extraordinary and compelling reasons. See *United States v. McGraw*, 2019 US Dist. LEXIS 78370 (SDIN 2019), at 16 (stating that based on the defendant's age and health considerations, further incarceration would be greater than necessary.)

## CONCLUSION

For the foregoing reasons, this Court should reduce Rafiq Sabir's sentence to time served based on extraordinary and compelling reasons of the risk posed by COVID-19, as well as due to his age and health as provided in USSG 1B1.13 Application Note 1(A) and (B).

Dated: June 25, 2020

Respectfully submitted,

*Kathy Manley*
KATHY MANLEY
Attorney for *Rafiq Sabir*
NDNY Bar Roll No. 105730
26 Dinmore Road
Selkirk, NY 12158

19

(518) 635-4005 (phone and fax)
Mkathy1296@gmail.com