UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

RAFIQ SABIR,

                Petitioner,

-against-

UNITED STATES OF AMERICA,

                Respondent.

12 Civ. 8937 (LAP)

05 Cr. 673 (LAP)

ORDER

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

    Before the Court are Petitioner Rafiq Sabir's December 6, 2012 motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and August 25, 2017, motion for leave to file an amended petition. (Dkt. nos. 1, 53 in 12-CV-8937). For the reasons set forth below, Mr. Sabir's motions are DENIED.

**I. Factual Background**

    The Court assumes the parties' familiarity with the facts of the case and will only give a high-level overview of pertinent background information. Rafiq Sabir, a Columbia educated doctor, and his long-time friend, Tarik Shah, conspired to support the al Qaeda terrorist organization.

    In 2003, an FBI investigation employed a confidential informant, Saeed Torres, who befriended Shah and recorded hours of conversation in which Shah discussed Mr. Sabir's views, as well as Shah's willingness to train potential mujahideen in martial arts techniques, among other things. The FBI then

introduced an undercover agent, Ali, to pose as an al Qaeda recruiter. Shah indicated, among other things, that both he and Mr. Sabir would be very interested in meeting the recruiter and that they came together as a "pair." (GX 807T at 3-4). On March 3, 2004, Shah traveled to Plattsburgh, New York to meet the undercover FBI agent. Shah and Ali discussed fighting jihad overseas. (GX 902T.) It was at this point that Shah brought up the potential assistance of Mr. Sabir, who he exclaimed was a close friend and an emergency room doctor. (GX920T at 2.) Ali instructed Shah not to discuss their agreement with the doctor "at this point . . . Until I tell you." (Id. at 23.)

On March 11, 2004, Torres informed Shah that Ali wanted to meet with Shah and Mr. Sabir in Florida, because that is where Mr. Sabir resided. (GX 813T.) Although Mr. Sabir was unable to attend the meeting in Florida, Ali and Shah met on April 1-2, 2004, in Orlando, Florida. During this meeting, the two further discussed jihad and the "brothers overseas." (GX 905-T at 1-3,9.)

The culmination of Mr. Sabir and Shah's conspiracy to provide material support to al Qaeda was a meeting with Ali, the undercover agent posing as an al Qaeda recruiter, in which Mr. Sabir swore *bayat* -- an oath of allegiance -- to al Qaeda and Osama bin Laden. On May 20, 2005, Ali made an impromptu visit with Torres at Shah's apartment building. During this meeting,

2

Mr. Sabir expressed interest in meeting mujahideen brothers in Saudi Arabia, where he had been working as a doctor and where he was scheduled to return shortly.  After giving Mr. Sabir multiple opportunities to back out, the undercover officer offered to take *bayat* from Mr. Sabir and Shah.  First Shah and then Mr. Sabir took the oath.  Mr. Sabir also provided his mobile phone number, using code, to Ali, for the purpose of providing medical assistance to mujahideen fighters in Saudi Arabia.

**II. Procedural Background**

Superseding Indictment S4 05 Cr. 673 (LAP) was filed against Mr. Sabir and three others on December 6, 2006, charging Mr. Sabir in two counts with conspiring and/or attempting to provide material support to al Qaeda in violation of 18 U.S.C. § 2339B.  Mr. Sabir was convicted of both counts and was sentenced principally to 300 months' imprisonment on November 28, 2007.

Mr. Sabir filed a direct appeal, and the Court of Appeals rejected all of Mr. Sabir's claims and affirmed his conviction in an opinion dated February 4, 2011.  United States v. Farhane, 634 F. 3d 127 (2d Cir. 2011).  Mr. Sabir's request for rehearing and rehearing en banc was denied by the Court of Appeals on May 12, 2011.  Petitioner sought a writ of certiorari in the Supreme Court and was denied on December 5, 2011.

Finally, Mr. Sabir submitted this habeas motion to the prison mail system on November 30, 2012 in accordance with 18 U.S.C. § 2255. On May 22, 2017, Mr. Sabir filed a Memorandum of Law in support of his § 2255 motion based on alleged newly-discovered evidence. Petitioner then filed a Motion for Leave to File an Amended § 2255 Petition on August 25, 2017, pursuant to Fed. Rule of Civ. Pro. 15 and 28 U.S.C. § 2242.

### III. Sabir's Petition

In this habeas motion, Mr. Sabir alleges deficient representation depriving him of his Sixth Amendment right to the effective assistance of counsel. In attempting to demonstrate that his constitutional rights were violated in connection with his conviction, Mr. Sabir raises a number of issues. Mr. Sabir contends that Edward Wilford, Esq., the attorney whom Mr. Sabir had selected and retained to represent him, was ineffective for a number of reasons.

For a movant to prevail on a claim of ineffective assistance of counsel, he or she must: (1) demonstrate that counsel's performance was below an "objective standard of reasonableness" under "prevailing professional norms;" and (2) "affirmatively prove prejudice" from the alleged dereliction in counsel's performance. Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984); accord Bennett v. United States, 663 F.3d 71, 84-85 (2d Cir. 2011). For the movant to demonstrate that his

4

counsel was not functioning as effective counsel guaranteed by the Sixth Amendment, both of these elements must be shown. Strickland, 466 U.S. at 687. However, "a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Venturella, 391 F.3d 120, 135 (2d Cir. 2004) (internal quotation marks omitted).

In his petition, Mr. Sabir first contends that his counsel was ineffective because he misadvised Mr. Sabir to sign a stipulation regarding testimony from translators and otherwise failed to challenge the Arabic-to-English translations by not providing a translator as expert witness. The Court rejects this contention. As an initial matter, the stipulation in question was only a "testimonial" stipulation stating that if the translators were called as witnesses at trial, they would have testified that their translations were accurate (GX 416; Tr. 596-97), and strategic decisions about stipulations are "virtually unchallengeable" if they are made after thorough investigation by counsel. United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004). In any event, there was overwhelming evidence at trial that Mr. Sabir fully understood what he was doing when he pledged bayat to al Qaeda.

Next, Mr. Sabir contends that defense counsel failed to challenge the authenticity of the recordings in which he pledged

bayat, which, according to Mr. Sabir, were improperly altered. There is no evidence to support Mr. Sabir's theory that the audio recordings were altered, and the Court rejects that claim as meritless.

Third, Mr. Sabir claims that defense counsel failed to call medical expert witnesses regarding Mr. Sabir's purported lack of ability to provide medical care for wounded mujahideen. The Court agrees with the Government that such testimony would have been pointless, as the audio recordings clearly show that Mr. Sabir offered to facilitate medical assistance for wounded terrorists. Specifically, when he was told of al Qaeda's need for doctors to help mujahideen who were wounded in "training" or "operation," Mr. Sabir's response was, "let me give you another number." (GX 906T at 48-49.). Mr. Sabir's arguments regarding the medical experts therefore fail.

Next, Mr. Sabir argues that his counsel failed to object to the admission of certain hearsay statements. However, co-conspirator statements, like those at issue here, may be admitted as an exception to the hearsay rule when the court finds: (1) that a conspiracy existed including the defendant and the declarant; and (2) the statement was made during the course of and in furtherance of the conspiracy. United States v. Gigante, 166 F.3d 75,82 (2d Cir. 1999) (holding that the conspiracy underlying admission of the statements as co-

conspirator statements need not be the charged conspiracy). As the Court found at trial, and as the Court of Appeals later affirmed, Mr. Sabir was part of a conspiracy when co-conspirators made the statements that were entered into evidence. Accordingly, the hearsay arguments do not provide any basis for relief.

Mr. Sabir then claims that Mr. Wilford had ineffectively failed to challenge, on appeal, the admission of certain newspaper articles during Mr. Sabir's cross examination. The newspaper clippings admitted were self-authenticating pursuant to Federal Rule of Evidence 902(6) and were admitted for the truth of the matter asserted, see Fed. R. Evid. 801(c)(2). Because the documents were relevant to the truthfulness of Mr. Sabir's testimony, they were properly admitted, and any appeal challenging their admission would have been meritless.

Furthermore, Mr. Sabir contends that his counsel failed to request a mistrial and failed to argue on appeal that certain Court rulings constituted abuse of discretion. The Court rejects this contention. Under the Strickland test, "[i]n attempting to demonstrate that appellate counsel's failure to raise a ... claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."

Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); see Jones v. Barnes, 463 U.S. 745, 754 (1983); accord Gulliver v. Dalsheim, 739 F.2d 104, 107 (2d Cir. 1984) ("mere failure to argue a colorable claim is not ineffective advocacy on appeal").  Mr. Sabir disparages each of the arguments asserted by Mr. Wilford on appeal, in an attempt to show that the arguments Mr. Sabir now promotes had a higher likelihood of success.

Among these claims, Mr. Sabir contends that Mr. Wilford acted ineffectively for failing to challenge on appeal the Court's admission of copies of newspaper articles.[1]  Mr. Sabir also complains that testimony by Yahya Muhammed concerning his actions on behalf of the mujahideen in Bosnia, as well as his relationship with the Blind Sheik, was overly prejudicial.  He contends that Mr. Wilford's failure to challenge the admission of Muhammed's testimony on appeal led to ineffective counsel. It is clear, however, that Mr. Wilford objected to the admission of said testimony.  This Court found that the defendant's Rule 403 objection was properly overruled and cannot be raised again on habeas review.  United States v. Quintieri, 306 F.3d 1217, 1229 (2d Cir. 2002) ("where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered waived and the law of the case doctrine bars the

---

[1]  A lawyer need not raise even nonfrivolous claims with the appellate court.  See Mayo, 13 F.3d at 533; (supra at 7).

8

district court on remand and an appellate court in a subsequent appeal from reopening such issues") (internal quotation marks omitted). Next, Mr. Sabir argues that Mr. Wilford's decision not to pursue, on appeal, the argument against the improper mention of Seifullah Chapman and Ali Tamimi by Government witnesses constituted ineffective assistance of counsel. Again, Mr. Wilford's decision not to pursue a frivolous argument cannot be considered ineffectiveness. Finally, Mr. Sabir cannot establish that any of his earlier claims was less likely to succeed than the claims he now makes on habeas motion. As a result, Mr. Sabir has failed to demonstrate ineffective assistance, or resulting prejudice. See Mayo, 13 F.3d at 533-34.

Mr. Sabir then makes a number of claims of prosecutorial misconduct. Specifically, his claims that the Government (1) submitted an allegedly falsified arrest record during trial and (2) violated the First Amendment's Establishment Clause by making disparaging comments about Islam during trial, (Mem. at 57-64), are hereby rejected by the Court. Both claims are baseless because Mr. Sabir provides no support for them. The Government had obtained an incident report indicating that Mr. Sabir was stopped in his car with Mahmud Brent and had confirmed the information with the officer who conducted the stop (see Tr. 2191-92). The Government had a good faith basis to ask Mr. Sabir about the incident. Furthermore, the Establishment Clause

9

of the First Amendment provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend. I. The introduction of evidence and/or the making of arguments concerning a particular religion do not violate/implicate the Establishment Clause because the action is not legislative in nature. The Government did not offer evidence, or argue, that Islam is inherently bad or that Mr. Sabir should be convicted because of his religious affiliation. Therefore, these arguments fail.

Lastly, in a memorandum of law filed in May 2017, Mr. Sabir contends that testimony of his co-defendant, Tariq Shah, qualifies as newly-discovered evidence showing his actual innocence and also raises additional ineffective assistance and prosecutorial misconduct claims. (Dkt. 44 in 12-CV-8937). These arguments are all barred by the statute of limitations. All claims raised in a motion under 28 U.S.C. § 2255 are subject to a one-year statute of limitations, which runs from the latest of "(1) the date on which the judgement of conviction becomes final . . . ; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). A claim raised in an otherwise time-barred supplemental filing does not "relate back" to the original, timely filing "when it asserts a new

ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005); Fed. R. Civ. P. 15(c). A new claim arises out of the same "conduct, transaction, or occurrence" as the initial claims "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and space from the originally raised episodes." Mayle, 545 U.S. at 645. "An amendment does not relate back merely because the proposed claims concern the same trial, or the same events presented or occurring therein, as existing claims." Ross v. Miller, 2016 WL 1376611, at *20 (S.D.N.Y. Apr. 7, 2016); see Mayle, 545 U.S. at 662 ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, [the] limitation period would have slim significance.").

Here, Mr. Sabir claims that Shah's claim somehow relates back to the timely-filed claims. The Court disagrees. All of Mr. Sabir's original claims allege ineffective assistance of counsel, but none of them relates to the submission of exculpatory evidence from Shah or the decision not to force Shah to take the stand. "Courts have routinely held that ineffective assistance of counsel claims do not relate back when alleging a different ground for ineffective assistance of counsel." Ross,

2016 WL 1376611, at *20. Consistently, Mr. Sabir's argument that the Shah-related claims are timely is in error. Shah's affidavit would not qualify as "newly discovered" evidence regardless of how recently Mr. Sabir obtained it. Assuming that Mr. Sabir's counsel exercised due diligence to obtain Shah's affidavit, it would only qualify as "newly available" evidence, not "newly discovered." See United States v. Forbes, 790 F.3d 403, 407 (2d Cir. 2015) (interpreting Fed. R. Crim. P. 33). Where a defendant was aware of the existence of evidence before or during trial, it would not qualify as "newly discovered" if "there was a legal basis for the unavailability of the evidence at trial such as the assertion of a valid privilege." Id. at 408.

Additionally, Mr. Sabir cannot claim that he was unaware that Shah would have given exculpatory testimony regarding their previous conversations and interactions.² Mr. Sabir also

---

² The Second Circuit has considered, and rejected, a virtually identical claim:

> Owen claims that prior to Samuels' sentencing hearing Owen "was unaware of Mr. Samuels' ability to exculpate him." This cannot be true. Owen was clearly aware of what he did and did not speak with Samuels and Baroody [about] on the days in question. If, as Owen claims, he did not discuss with Samuels or Baroody a plan to ship marijuana to Florida, he would have known prior to trial that both Samuels and Baroody could have attested to this fact. Owen was at all times aware of Samuels' "ability" to exculpate him, but was unable to benefit from Samuels' testimony

(Continued)

acknowledges that his trial counsel sought to call Shah as a witness, advising the Court that, if called, he would assert his valid Fifth Amendment rights. In this case, Mr. Sabir would not have sought Shah's testimony unless he believed it would have helped his case. Therefore, Shah's affidavit is not "newly discovered," and the provisions of 28 U.S.C. § 2255(f)(4) do not apply to save that claim from the statute of limitations.

Mr. Sabir contends that the affidavit given by Shah proves that he is actually innocent of the material support for terrorism charges for which he was convicted and is therefore exempt from the statute of limitations set forth in § 2255(f).[3] However, such affidavits -- submitted by a convicted co-conspirator, long after any credible threat of further prosecution has passed -- are given little if any weight. See, e.g., Drew v. State, 743 S.W.2d 207, 228 (Tex. Crim. App. 1987)

---

(Continued)
    because Samuels did not make it available until after the trial was over. In these circumstances, Samuels' testimony is not newly discovered evidence within the meaning of Rule 33.

United States v. Owen, 500 F.3d 83, 91 (2d Cir. 2007).

[3] "'Actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). This narrow test is satisfied only if the defendant can demonstrate that his acts "have been ruled not to constitute criminal conduct." Underwood v. United States, 166 F.3d 84, 88 (2d Cir. 1999).

("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement."). Because Shah's affidavit consists of a mere statement of innocence, it does little to contradict the substantial evidence proving Mr. Sabir's guilt. Consistently, no hearing is necessary to reject Mr. Sabir's claims. The Court finds that given the overwhelming evidence of Mr. Sabir's guilt, no rational jury, if presented with Shah's testimony, would have determined that Mr. Sabir was actually innocent. See McQuiggin v. Perkins, 569 U.S. 383,399 (2013) ("[Petitioner] must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. Unexplained delay in presenting new evidence bears on the determination whether the [defendant] has made the requisite showing.").

Lastly, Mr. Sabir has filed a Motion for Leave to File an Amended § 2255 Petition, pursuant to Federal Rule of Civil Procedure 15 and 28 U.S.C. § 2242. He seeks to amend his motion to add a claim of ineffective assistance of trial counsel based on trial counsel's failure to call Tarik Shah, as a witness in Mr. Sabir's trial, and to add a claim of prosecutorial misconduct associated with an alleged failure to disclose exculpatory information. For the same reasons set forth above,

Mr. Sabir's motion for leave to amend is denied. To the extent they are not expressly addressed above, the Court has considered Mr. Sabir's remaining arguments and finds them unavailing.

### IV. Conclusion

For all the foregoing reasons, Mr. Sabir's § 2255 motion and motion for leave to file an amended petition are <u>DENIED</u>. (Dkt. nos. 1, 53 in 12-CV-8937). Finding that Mr. Sabir has not made a substantial showing of a denial of a constitutional right, no certificate of appealability will be granted. The Clerk of the Court is directed to mark the action closed and all pending motions denied as moot and to mail a copy of this order to Mr. Sabir.

SO ORDERED.

Dated:   October **16**, 2020
         New York, New York

*Loretta A. Preska*
LORETTA A. PRESKA
Senior U.S. District Judge